Your Honor, my name is Gerilyn Owens, and I'm here on behalf of the Respondents' Appellants in this case. This case in the District Court was a Federal habeas, but the question involved in this appeal is the District Court's findings with regard to counsel involved in the case. Despite the motion to dismiss. I'm smiling, and you're smiling, because findings is the word, right? That's what we're here to discuss. Right, Your Honor. And I do believe, despite Counsel Opposite's statements in his brief that there were no findings, I don't think you have to use the magic word I find, because the Court's order is replete with findings of bad faith and misconduct. And his — the facts analysis he provided in his order. So if you prevail and you say it's replete, we'd be doing a red line, and we would go through and strike, and you think we'll know each time it's a finding versus an off-the-cuff, sharp criticism? Have you outlined each finding that we would strike? In my brief, I outlined findings that were supportive of his finding of bad faith, or his — And I believe that they're not supported by the record. Do you know off the top of your head how many findings exist in that document? Specifically, a verbal warning, and specifically that we violated the oath of our office. I'm just wondering the number, because there's quite a bit of criticism. Yes, Your Honor. There is. No, not the exact number. But the whole opinion is full of facts that aren't supported by the record. Factually, is it correct that you didn't file an opposition to Montalto's motion for sanctions and contempt? Originally, the counsel who represented the State, when she filed her original motion to dismiss, he filed a motion for sanctions which was a traverse-slash motion for sanctions, and it was docketed twice, separately. But she did not respond to that, likely because most of it was so obvious from the record. I don't really know why she didn't respond. That puts the district court in a tough spot. And then the magistrate judge denied that initial motion for sanctions. In his R&R, he indicated that that was denied. So I think anything further beyond that, he filed it again and again and again, and I don't think she continued to respond to that because it kept asserting the same information that the magistrate judge had already — You rely heavily, as you should, on Walker. Yes, Your Honor. But do you know of any case, our Court or any other circuit, that has found judicial criticism finding to be appealable when the sanction order was denied? In other words, you prevailed below. I did not find a case where the sanction order was denied, but I don't find this case to be in a worse posture than those cases because the order is so full of findings that just because he ultimately denied it, it still doesn't take away the fact that in a published opinion, he has found us guilty of violating the oath we took and violating the lawyer's creed and failing to — What's the limiting principle? Let's imagine he had said exactly what he said, but he said it orally, so it's in a transcript. But it's not in a written decision that you prevailed in. Right. Because we're looking for a very clear rule of law because judges say things intemperately. We do. District judges do all the time. Would that — would those oral arguments, findings be appealable? I think I would have less of a case if it was just orally on a record, not available — publicly through Westlaw, not available to be cited. But I do think we would still have a fairly solid argument that he didn't just — he went beyond judicial criticism. This was not that we failed to do this one thing or failed to do — But he vindicated you at the same time. And it's just — it's a little bit — I'm just wondering, let's imagine federal government court says, shocking, appalling, blatant violation of Brady and Nabu, sort of the worst for a federal prosecutor, mistrial even. The logic of these immediate appealability is the government lawyers could then appeal before there's a retrial. They get a separate appeal. That's what's going on. So the case goes back, set for retrial, the repross, but now we've got to resolve over a year the government prosecutor's reputational concerns? I think if they go as far as the district judge did in this case and finds a violation of your — in that situation, a violation of Brady and Nabu, I think that they do have a right to appeal. What if the judge is attacking and makes a finding of misconduct as to a witness? Can the witness appeal? No, I don't think — it's not a reputational injury like as a — this is my livelihood. This is my career, my professional reputation. A FBI agent, a law enforcement officer on the stand. You know, I'm shocked that was perjury. Then the agent gets to appeal. I think — no, I don't think in that case they would. But I don't think a finding of — if there was a finding of perjury, I think there might be separate proceedings. But I don't think — That's what a lot of other courts are doing, right? They're saying if there is — it's what we do in the appellate. When we — for discipline, it requires discipline, suspension, some sanction. And that — that seems to be what other circuits are doing, but I agree Walker is a much more generous rule. Right. And I read Walker to say exactly what happened in this case. He went right to the line, even though he ultimately denied the motion for sanctions. He referred us to a case where sanctions were entered. He entered a verbal reprimand. He found we violated the oath of our office. And he found that we should revisit the Lawyer's Creed, the code of professionalism for the state's attorneys. So I think the fact that he ultimately denied it, he — in essence, he didn't deny it. I mean, he didn't — he did find the bad faith. He did find the use of his inherent power to issue that warning. He didn't refer this out to the state bar examiner for violations of the bar rules, did he? No, sir. And I understand in Zenty that that is what happened, that that case was referred. But I find in today's electronic age, this case has already been cited in the Mississippi Supreme Court, pointing to — in this — in the underlying proceedings, but it's cited in a concurring opinion because the petitioner provided this opinion to the Mississippi Supreme Court. So not only has the district court found it in this one judge's courtroom, but now the entire Mississippi Supreme Court has seen this opinion and taken it as factual, taken the facts finding therein as accurate, when if you review the record, they're not accurate findings of fact with regard to — The district court bar has an admissions committee, too, I would assume. I believe they do, yes, Your Honor. Nothing was referred to them. Not to my knowledge, Your Honor. Now, you signed the notice of appeal on behalf of the Department of Corrections, right? Yes, sir. I entered an appearance — None of the other lawyers' signature appears anywhere on the notice of appeal. Your Honor, the two other attorneys who worked on this case no longer work for our office. They left — We're looking at whatever appeal you have. Is that correct? Yes, Your Honor, but I'm appealing on behalf — in my notice of appeal on behalf of the named attorneys in the notice of appeal, as well as our office. If you — I'm sure Your Honors are very familiar with the district court's opinion and the statements made with regard to the office of the attorney general, which are not supported by that. Well, that's not — I mean, these lawyers didn't work for the attorney general, did they? No, they all did. They were special assistants, the ones named in the pleadings. I thought you implored by the Department of Corrections. Our — so the way it's structured in Mississippi, the attorney general provides attorneys for all the state agencies. But for federal habeas cases, there are three, now four, that handle all federal habeas. So it appears that the judges in our districts never send those cases out to the Department of Corrections. They always come to the attorney general's office. So there are four of us that handle federal habeas, any kind of federal habeas, whether it be revocation or convictions on the merits. I mean, these are very sensitive situations, right, in terms of judges needing to police attorney behavior. And then, of course, judges not — federal judges especially — not overberating. Do you see any creative options here? You didn't file your opposition when the motions were sanctions. So you claim that it's just such obvious, clear error, but actually the district court wasn't given that. There was no opposition. So I guess my question is a legal one and a factual one. The legal one is, have we, since 1997 and Walker, ever actually entertained an appeal? Because in Zenty and Elma Zane, we don't. Do you know of any time where we've actually entertained an appeal from a criticism-slash-finding since Walker? Since Walker, Your Honor, I was not able to locate a case that — So it's sensitive, but you're right. Walker does say if there's a finding of professional misconduct, then that is a jurisdictional fact. I wonder, with all the various opinions and findings in this case, and as I read the record, your client apologizing that Mr. Montalto gets released erroneously, then get brought back in, then he gets reclassified, it seemed to me they were right to apologize to the judge for all the very enormous mistakes made here. And they didn't file the opposition. Why wouldn't it behoove us to have this remanded back to the district judge so the district judge can say, well, this criticism is a finding, this one is just an opinion, this is — And maybe you'd convince him with the filing you didn't give him previously until the motion to reconsider that, in fact, none of this is warranted. What's your thought on that? And that's my point, Your Honor. I mean, that was my next point, is that our motion to reconsider, we laid out specifically each sentence, I guess, in his order. District judges don't often relitigate things in motions to reconsider. They expect that to come right in response. Right? You've been there a lot, right? In a motion to reconsider, that's usually not when you litigate things. Right. And the district judge is full of replete with apology. He doesn't know what's going on. The pro se inmate doesn't. So both sides seem to have some opportunity to retreat a little. And maybe, in fact, there are no jurisdictional facts here. Maybe the district judge on analysis would say, you know, I was frustrated and I vented, but I didn't mean to make a finding. And I think my concern with sending it back to the district judge is that we've had two hearings. And to be honest with you, until we got to the first hearing, I don't think counsel who had taken over the case at that time realized that he was considering the sanctions because the magistrate judge had already denied that motion for sanctions. So when he sets the hearing, he set it as an omnibus hearing, so there was no direction in the order as to why we were going to the district court. Excuse me. But we thought we were there strictly on a finding of fact or he wanted to explore additional facts. And so during that hearing is when he first mentioned that still before him were a motion for contempt, two motions for sanctions. Because the prisoner kept – every time he responded to one of our pleadings, he styled it as a response and motion for contempt. And he kept asserting the same exact arguments he had previously addressed. And during these hearings, we developed the facts to show that none of that was accurate, that we did not timely file our response. We didn't – we went through every single thing, that the timesheet that was attached to the pleadings was not an altered document. It was a document that's generated in the course of business after the Department of Correction. You know, one thing that concerned me was when he directed that the transcript be filed, that that would not have triggered an inquiry by counsel as to whether there's any record of the proceedings, whether it's a tape or type transcript or what it is. I mean, I don't understand why counsel took such a narrow view of that. And you should have known, it seems to me, that in this department, that's the way hearings were at least sometimes or maybe most of the time held. Your Honor, counsel that handled the case initially, she did actually state in her pleading that a hearing had been conducted but that there were no transcripts, and she did attach, pursuant to the rules, the documentation that explained the RVR hearing and what the findings and what happened at that hearing. That's what the Department of Corrections— Why wouldn't she have made an inquiry for the tape? I think – so, and she wasn't aware of the tape until his traverse, because when you call – when she called the Department of Corrections initially and she asked for any documents relevant to the revocation, they forwarded her the RVR paperwork. But can't you understand the judge being frustrated when he asked for, in effect, the record of the hearing and he gets back – he doesn't get back any information that's really productive and there is a tape there? I think, Your Honor, that he continuously got back information that there is no transcript, there is a recording. And he never once indicated, I'm interested in that recording. I mean, we kept looking at it, calling back. I know there's emails in the record where counsel, again, emailed the Department of Corrections and said, is there anything else with regard to the revocation that you can give me, anything else that you have, any transcripts, any information? And then when she left our employment and the other attorney took over, she, again, in getting ready for the omnibus hearing, contacted the Department of Corrections again and said, we've now been ordered to provide the person who's responsible for making the hearing or the transcripts. There are no transcripts. So now let's see if we can track down the person who's responsible for making this hearing because whoever she had talked to prior to that was the person who provided her just the paperwork. My time is up, but thank you. Thank you. Steed, appearing as a special Respondent in this case. And, Judge Higginson, you touched on, I think what's the real problem with the appellant's position is they've provided no clear rule. The blot standard is essentially a I'll know it when I see it kind of standard, where this Court would have to decide case by case whether any particular criticism or negative comment by a judge constitutes a blot on the reputation of the attorney that is significant enough for the Court to step in and conduct some kind of review of that statement. The only way to derive a clear rule from the two cases that really matter, that really apply here, and that's the Walker case and the El-Mezzayim case, is the clear distinction between the two situations is the presence of a hearing, a contested hearing over the alleged misconduct. In Walker, there was a sanctions motion. The Court clearly considered that there was a contest over alleged misconduct. The Court made a finding of blatant misconduct. And then this Court said when you've got that situation and there's this finding, a specific finding of blatant misconduct, that's the kind of thing that's going to convey standing to the attorney to appeal. I mean, I'm sympathetic, but I'm sympathetic mentally with the First Circuit's much stricter rule. But the First Circuit itself has drawn the distinction with us and said, you're familiar with the Williams decision? And in that case, they specifically say, and then in El-Mezzayim, we make it sound like Walker's a clear rule. If the order contained a finding that Hollander had committed professional misconduct, we have jurisdiction to review. So it doesn't turn on a hearing in El-Mezzayim. It seems to be a refinement. And then you look at the sentence here, the one that jumps out at me, is the Attorney General's Office disregarded court orders, presented incomplete information, and submitted patently false statements to the Court. Yep. Putting those two together, our Circ — wouldn't our Circuit say that's appealable? No. In El-Mezzayim, the Court — this Court said that the distinction in El-Mezzayim from Walker is that there was no disciplinary hearing being held or anything. This was just a — there was a — Where do you see the requirement of a hearing as a limiting principle? In El-Mezzayim, it refers to a disciplinary hearing. It's pages 578 and 579 of the El-Mezzayim opinion. I must have missed that. And it distinguishes Walker as involving a disciplinary hearing and making an actual finding of professional misconduct. The statement in — that was made in the district court in the El-Mezzayim case sounds like a factual finding, that the court — that the attorney — a lack of candor to the court, failure to disclose certain information to the court. That sounds like a factual finding. But the court in El-Mezzayim says there wasn't any kind of hearing about this. This is just a negative comment, negative observation. It's the kind of thing — it's the kind of criticism that's not appealable. And that's what we have here. The problem — the way to distinguish whether you've got any kind of formal factual finding is was there a contest over this that could produce an order that has a formal finding? There wasn't any — all of the argument and explanation and evidence that they present to say, no, no, you're wrong about all of this, that all came after the order. The — and the problem there, if the error here is that once the district court got all of their arguments and explanations and everything in their motion to reconsider and then still left its order standing, if that's the — if that's the error, then what the appeal ought to be here is an appeal from the denial of the motion to reconsider. And there's a whole body of case law. They did notice that for appeal. They noticed it, but they haven't argued anything. They've said there's a whole body of case law about what the standard of review is for denying a motion to reconsider, cases where courts were required, where this Court remands it and says you need to reconsider because of the abuse of discretion in denying it. Right. So it's actually a softer standard than a clear error one. It's a different standard. It's — it's not clear error because it's not talking about a factual finding. What's the use if clear error was committed? Why wouldn't this set of arguments you've made — you know I'm going to ask this question, why doesn't it all beg for us not applying a bright-line rule and saying we know what you meant. You meant to find professional misconduct as opposed to this was extraordinarily frustrating. However, the law does mean that if you made a finding, that's appealable. And therefore, remand to let the district judge now with the benefit their immense response decide, okay, I've vented because you were apologizing this man had to go in and out and reclassify, but I didn't actually want to have a finding where you didn't have a hearing. What's the thought on that? I think the only way to get there is to have a I'll know it when I'll see it standard. It's — it's just — No. We're just saying you didn't clarify whether these — replete all these disapprovals were findings or not. Those are jurisdictional facts. We need to know whether they were. It forces the party in the district court to go through with the red line rather than us to try to figure out what's a finding versus a anger. But I think that what that sounds like is a reversal of the denial of the motion to reconsider. It is a little bit that. You're right. And I think the problem there is forfeiture, because they've cited no case. They've cited — they've made no legal argument to tell this Court why — We can open forfeiture. Well — It's not a relinquishment. The Court can do that, but I think then in order to explain how the Court below abused its discretion by denying the motion to reconsider, and it really should have reconsidered and given all the arguments and explanations, et cetera, et cetera, in order to explain why this Court is stepping in and reversing what the district court did, you have to build that argument because they haven't provided it to you. And I think that puts the Court in the role of advocate rather than — No, no. We can hold jurisdiction and say we want to know if there are facts that support jurisdiction here. Let's move — I don't want to — you have other arguments, and we appreciate your volunteering, being pro bono counsel, but let's assume Walker is at one end of the Then what? Do we know which attorneys get relief? Do we know which findings are clearly erroneous? And what would the relief be? Well, so first, in getting to the merits, assuming there's jurisdiction here, in getting to the merits, I think there's another forfeiture problem. They failed to cite any clear error case. They failed to argue clear error. They've said the district court's wrong. They're wrong. He's wrong. He's wrong. But standing up here and saying he's wrong is not the standard for reversal. They have to explain how the legal standard of clear error has been met, and they've done none of that. Now, on clear error, for example, the finding of bad faith, if we call it a finding, of bad faith as to the feigning ignorance, right, the Court explained why he felt that they had feigned ignorance about his interest in a recording. They haven't explained how that's clear error. The Court felt like it should have been obvious from the beginning that he wanted an audio recording. He pointed to statements they made about how they were looking for an audio recording. Then at the hearing, they acted like they didn't know he wanted an audio recording. He felt like that was feigned in bad faith. That's plausible, and that's all he needs with a thumb on the scale for clear error, and they've failed to explain how that rises to the level of clear error for reversal. On the altered document, they've offered explanations for why the MDOC changed the eligibility for early release and that sort of thing. But the document itself is altered. It is altered and it is false. It is a false document, because it has an entry in 2008 that was added to say that he was removed from trustee status. And they will concede and admit that he was not removed from trustee status in 2008. They didn't discover he wasn't eligible for early release until 2015 or maybe late 2014. So if they wanted to remove him from trustee status and say he wasn't eligible for early release, there should have been an entry in 2014 or 2015 revoking that and explaining why he doesn't get that. They went back and backdated the document and put an entry at 2008 that they will It is a false document, and they didn't explain the false document. They explained why the MDOC was revoking the early release eligibility, but that doesn't explain a false document that was backdated. So the judge had every right to be critical of that and to accuse them of not explaining why they're submitting a false document. First, thank you for taking on, ably taking on this court assignment as special respondent. We appreciate that. Standing question. So at the bottom of the notice of appeal, you see the Mississippi attorney general's name. And then most or maybe all of the district court's misconduct findings are against, quote, the attorney general's office, unquote. Why doesn't that solve all the standing problems and proper appeal problems? Well, I think that that identifies who the appellant or appellants, the attorneys of the attorney general's office, I think that identifies the parties. But the question on standing is whether those parties on appeal, those appellants, have been harmed sufficiently to give them standing to bring this appeal. And that's where the question of whether what the district court said rises to the level of the kind of harm that conveys standing. I read it, though. The findings were against the attorney general's office. So you mean that there's no standing for individual attorneys because it's against the office? Is that what you're asking? No. There's kind of this quarrel about standing. But as I read the district court's misconduct findings, they seem to be findings against, quote, the attorney general's office, unquote. And why isn't that sufficient? Well, I think the sufficiency for standing is the question of whether the findings are of a nature that create a harm for the attorney general's office that conveys standing to appeal. And that's the question. And I think my reading of Walker with El-Mazahin is that there has to be a contested dispute hearing of some form over the alleged misconduct to produce an order that could have a formal finding that then can cause the sort of harm that conveys standing. And that's what we don't have here. And they admit that. Near the bottom of page 4 of their reply, they admit there was no hearing on any of this alleged misconduct. All of their explanation and argument against the criticisms comes in the motion to reconsider, which then the court just denies in its discretion, and they've failed to raise any argument about the denial of the motion to reconsider under the body of law that would govern that. So I think on standing, it's we don't have formal findings, and then there's forfeiture problems about the motion to reconsider, the denial of that. Getting back to the merits, there's they haven't they failed to demonstrate any of the alleged findings are clear error because they haven't argued clear. They've just said he's wrong, and here's why he's wrong, but they haven't explained how it rises to clear error. And every single one of the alleged findings, there's a plausible basis for why the judge is frustrated and lodging these criticisms. And if there's a plausible basis for it under the clear error standard, that thumbs on his scale, on his side of the scale, and they haven't explained any particular finding, the change of positions. I think in many situations, the appellants are talking past. They're shooting at the wrong target. The judge complained about changing positions, and he's talking about they changed their story about the reason for the release being revoked. At first, it was because he didn't have an address that was approvable, and then later it was because he wasn't eligible for early release in the first place. And that was a change in position, and they admit they changed that position as they got more information. He also complained that they were changing positions about whether the reclassification hearing even happened. First they said that there wasn't a second hearing, then there was a second hearing, then it's not clear whether there was a second hearing, there's no recording or transcript of it, so we don't know if a second hearing, a reclassification hearing occurred. The judge was frustrated with that and felt like they were changing positions about  that. That's what he – when he criticizes them for changing positions and taking false positions, those are the positions he's talking about. Their response is, no, no, our position was consistent from the beginning that he had failed to exhaust his State remedies. That's true. That was a consistent position, but that's not the changing position he's referring to. So, again, they failed to show any clear error on that criticism. On the rule of law, you're urging – I need to read Elma Zane more closely. I didn't think it said disciplinary hearing is the prerequisite. I would almost think that a federal judge that, you know, makes a finding of misconduct without a hearing, that would be more suitable to appeal than – right? Because that's even more abrupt. You don't get a hearing. But I'll go back and take a look and see if – I would have thought the bigger point would be the motions for sanctions in contempt were denied. So they actually prevailed and that there's no law in the Walker line of authority where an attorney who wins as to their misconduct can still appeal. And I think that that's right, too. I think the – so the problem with Walker and Elma Zane is the discussion of these standing questions is a few paragraphs long in each opinion. Walker, that's the entirety of the opinion. It's maybe four or five paragraphs. Elma Zane has a long opinion about a bunch of other stuff, but it only has two or three paragraphs about this standing question. The Adams case from the Third Circuit, I think, is pretty helpful in terms of providing an extensive discussion of this standing question, and it discusses the other circuits and how the other circuits have ruled and that sort of thing. And in the Adams case, the Adams case is actually a lot like this one where the tangible sanctions were denied, there was no formal reprimand, but there were statements that sound a lot like factual findings. And in Adams, the Third Circuit said there was standing to appeal. But the key difference, again, and this is neither the Adams case nor the Elma Zane case nor the Walker case, none of these cases say this explicitly, but the only way to make sense of all of them, the only way to reconcile them, is that the difference in Elma Zane and this case is that there was no contest about the alleged misconduct before the order came out finding misconduct. In Adams, the key difference is there was a hearing. There was a hearing about motions for sanctions. Here, there were two motions for contempt, and then there was a response that was characterized as a motion for sanctions. But all three of those motions, they only raised one issue. The Petitioner raised one issue. He said you should find these attorneys in contempt or sanction them because they didn't produce a transcript when they were ordered to. That's the only issue that was raised. Ultimately, the Court here doesn't criticize them for failing to produce a transcript that doesn't exist. That's not the criticism. Again, they're swinging at the wrong pitch when they say we couldn't produce a transcript. How could we be found, you know, to have engaged in misconduct when we didn't produce something that doesn't exist? That's not what he's criticizing. He's criticizing the failure to respond in a timely manner to repeated orders to provide a transcript or an audio recording. That's what he's complaining about, and it's clear in the text of the order itself. So actually in this case, even though there were two motions for contempt and a motion for sanctions, the misconduct that is being criticized in the district court's order, none of it was actually raised by those motions. Those motions just talk about the failure to produce a transcript. And that's not what he criticizes in the end. So we have here a case where there was no hearing, there was no contest about any of the alleged misconduct. The court just expressed its frustrations after a year and a half of proceedings with all the dancing around that was happening and changing positions and putting false documents before the court and failing to respond in a timely manner to requests for transcripts and audio recordings. But there was no contest about that. There was no hearing about that. There were no competing filings about any of that. All of that comes after the order in a motion for reconsideration. And that's the distinguishing. It has to be inferred from the case law, but the distinction between Adams and Walker and El Mazin is that absence of any contest or hearing that would produce an order that could have formal findings. This case doesn't have anything like that before this order. And so I think it's – I think to go to your hypothetical about a decision where there's a – what sounds a lot like a finding without any hearing might be more troubling, that's where they really should be appealing the denial of the motion to reconsider and citing all of that case law for why a court ought to reconsider when they've – when it's been presented with what it's been presented with. They just haven't done that here. If there are no further questions. Mr. Steed says you're swinging at the wrong pitch. Well, Your Honor, I would like to point out that El Mazin does not – I don't read it to require a hearing. It says the court was not engaged in a disciplinary hearing, nor did the court expressly conclude that Hollander violated a legal or ethical duty or rule. So I don't read that requirement into – I did not either, but what about – what about the fact that what you should be briefing to us is the denial of the motion to reconsider? We appealed the reconsideration and the original order. Perhaps we didn't set out the appropriate standard for the reconsideration, but we did walk through the clear error standard for appealing the order, and we discussed at length why those findings are clear error. And I – if you look at El Mazin and you – We decided that in the first instance. I'm sorry. Could we reassess the evidence and the district court never – never had the opportunity to? Your Honor, I believe the district court did have that opportunity in the motion to reconsider, and during those hearings, there was evidence presented during those hearings. That's the evidence he relied on to make his findings with regard to each of these aspects of the case. He – In Mississippi, you may know this, both at the attorney general's office and just as a member of the bar, if a judge makes a finding of misconduct, is the lawyer obligated to self-report? I know in the Department of Justice you are. You have to report to the Office of Professional Responsibility. So if this were construed as a finding, was this – would this then go into the AG's office to their professional responsibility people? Do you know? Your Honor, I apologize. I don't know the answer to that. Oh, that's right. I do apologize. Maybe it doesn't exist. And there isn't a duty to report to your licensing authority either. I guess not. I know there were findings made in this report with regard to myself, particularly when I didn't enter an appearance in this case until the – after the order had been entered. So I certainly couldn't have contributed – and there's – and it specifically names me as the attorney who I didn't even file anything in this case. I just bring it up because in the Federal Government, often that's where the vindication comes. People just have to suffer the slings and arrows of judges, but then it gets reported, looked into, and you can be vindicated. But here, no, you're sort of stuck with it. You filed the motion to reconsider. Okay. Go ahead. Yes, Your Honor. And we do respect the district court's right to run his courtroom and to certainly take control of his courtroom the way he sees fit. But I think in fairness, in this case, there was no lack of candor on behalf of the attorneys who were proceeding. The original order to answer provided that we provide full and complete transcripts, but the district court acknowledged that our practice has been, with the motion to that motion to dismiss. In addition to, in this case, there were no full and complete transcripts, because there's been a failure to exhaust on behalf of the prisoners, so there was nothing ever – there's no record ever produced to be able to give that to the district court. Then when the district court entered the second order, counsel did respond to the district court's order explaining her position that there were no transcripts, but there was a hearing. But yet there was never an order by the district court to produce a hearing, and she continued to argue the position of the office that he failed to exhaust and that he failed to state a constitutional claim. So from the beginning, she stayed consistent through her arguments, and she did add there was the argument – he was properly revoked, and that was our office's argument the entire time. But in addition, we determined throughout the course of the investigation that he didn't have to have a revocation hearing, because he was improperly released in the first place. But there was never a change from our position that he was properly revoked and didn't provide an address. There was testimony at the first omnibus hearing that he failed to provide an address. And the answer about the document is it wasn't altered? No, Your Honor. That document was not altered, and that was explained both in pleadings and at the hearing that the Mississippi Department of Corrections, in its normal course of business, went – there was no place to make the notation that this was a sex offense in their computer system, which is why he was released when he should not have been released, because he was a sex offender. So when they brought him back in, they made the – they went in there, the computer system had changed, so they made the change and added that he was a sex offender and then made an entry on the timesheet that any previous trustee time was removed because he was not entitled to earn it. There is an entry on that timesheet. But this is a record that's kept in the normal course of business that was provided to us as a printout, but there's certainly no alteration. And any time there's a change, any time there's a change with any – if earn time is taken away or anything is removed, then there's an entry. But they dated it back to the date he started earning the earn time because he was never allowed to earn it. So when they put that entry in there, they removed his earn time from the date he came into the system. But that was documented on that timesheet. I see that I'm out of time. If the Court has any more questions. But, Your Honor, I would just ask that this Court reverse the findings of error on the district court – plain error on behalf of the district court and reverse the findings of misconduct and bad faith. Thank you, counsel. Thank you. The cases for the day are all submitted. Thank you.